UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**GABRIEL ALWIN,**

**Plaintiff,**

**v.** **Case No. 26-C-224**

**GYPSUM MANAGEMENT SUPPLY, INC., et al.,**

**Defendants.**

---

# ORDER GRANTING MOTIONS TO DISMISS

---

Plaintiff Gabriel Alwin, proceeding without an attorney, commenced this action on February 10, 2026, against Defendants Gypsum Management Supply, Inc.; Badgerland Supply; Tamarack Materials, (together, the Company Defendants); and Teamsters Local Union No. 200. Compl., Dkt. No. 1. Plaintiff's complaint alleges the Company Defendants terminated his employment in violation of a collective bargaining agreement (CBA); the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.; the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq.; and the Wisconsin Workers' Compensation Act, Wis. Stat. § 102.01, et seq. Teamsters Local 200 is alleged to have breached its duty of fair representation in violation of § 301 the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. The court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367. The case is before the court on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Teamsters, (Dkt. No. 22), and the Company Defendants, (Dkt. No. 23). For the reasons that follow, the motions will be granted.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). Rule 8 requires a pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). A defendant is entitled to "fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up).

Defense of federal lawsuits is expensive. To open the doors to discovery and thereby require a defendant to incur the substantial costs of defense, a complaint must therefore include sufficient allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court must "take all of the factual allegations in the complaint as true" and draw all reasonable inferences in the plaintiff's favor when considering a motion to dismiss for failure to state a claim, courts need not accept the truth of legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Attaching documents to a Rule 12(b)(6) motion to dismiss does not necessarily convert a defendant's motion into a motion for summary judgment. When deciding a Rule 12(b)(6) motion, a court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim. *Adams v. City of Indianapolis*, 742 F.3d 720,

729 (7th Cir. 2014); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). A plaintiff cannot avoid early dismissal of a fatally flawed case by hiding the ball, especially where such documents form the basis of the plaintiff's claims

**BACKGROUND**

Plaintiff alleges that Gypsum is a corporation with operating divisions, including Badgerland; Tamarack is a Gypsum-affiliated entity employing bargaining-unit employees; and Teamsters is a labor organization and the exclusive bargaining representative for Plaintiff. Dkt. No. 1 ¶¶ 10–13; *but see* Dkt. No. 24 at 1, n.1 (explaining that Badgerland Materials is a d/b/a of Tamarack Materials, Inc. and is not a legal entity; Gypsum Management and Supply, Inc. is the corporate parent of Tamarack Materials, Inc.; and that Gypsum Management and Supply, Inc. and Badgerland Materials are not proper defendants).

Plaintiff further alleges that he was employed in a bargaining-unit position subject to a CBA that he says required "progressive discipline prior to termination" in most circumstances. *Id.* ¶¶ 14–15. In September 2023, Plaintiff underwent emergency surgery, was medically unable to work, suffered from serious and life-threatening medical issues, and was later placed on Family and Medical Leave Act (FMLA) leave and approved for short-term disability benefits. *Id.* ¶¶ 16–18. Plaintiff notified Defendants of these issues. *Id.* ¶ 19. Plaintiff also sustained a work-related shoulder injury, about which Plaintiff notified management—it is unclear from the complaint exactly when that injury occurred. *Id.* ¶¶ 20–21. On or about March 21, 2024, the Company Defendants terminated Plaintiff's employment pursuant to a "three-day no-call/no-show" policy. *Id.* ¶ 22.

Plaintiff alleges that, inconsistent with past practice and despite knowing Plaintiff was on medical leave, the Company Defendants never attempted to contact Plaintiff. *Id.* ¶ 23. Plaintiff's

employment was terminated shortly after Plaintiff's short-term disability period ended and while Plaintiff remained medically disabled and benefit-eligible. *Id.* ¶ 24. Plaintiff asserts Teamsters "discouraged grievance pursuit, failed to investigate, failed to enforce the [collective bargaining agreement], and sided with management during the grievance process." *Id.* ¶ 25.

**ANALYSIS**

Count I of Plaintiff's complaint alleges the Company Defendants violated § 301 of the LMRA (29 U.S.C. § 185), and Count II alleges Teamsters breached the duty of fair representation. Counts III through V are against the Company Defendants—Count III alleges violations of the FMLA (29 U.S.C. § 2617), Count IV alleges violations of § 510 of ERISA (29 U.S.C. § 1132 and § 1140), and Count V alleges violations of Wisconsin workers' compensation laws (Wis. Stat. § 102.35). Compl. ¶¶ 26–46.

**A. Hybrid § 301 Claim Against All Defendants**

Counts I and II, taken together, are known as a "hybrid § 301" claim against all Defendants. Count I alleges the Company Defendants breached the CBA governing Plaintiff's employment; Count II alleges the union failed to represent him during the grievance process. *See* Compl. ¶¶ 26–33. "A suit against an employer for breach of the CBA proceeds under § 301 of the [LMRA], and the suit against the union for breach of the duty of fair representation is implied under the National Labor Relations Act. A union member's suit against both the employer and the union is referred to as a hybrid Section 301 claim. Hybrid Section 301 claims are interdependent; i.e., to succeed against either Defendant, [Plaintiff] must succeed on both claims." *Rocchio v. E&B Paving, LLC*, No. 120CV00417JRSTAB, 2022 WL 972762, at *2 (S.D. Ind. Mar. 31, 2022) (citations omitted); *see also Yeftich v. Navistar, Inc.*, 722 F.3d 911, 914 (7th Cir. 2013) ("When union members sue their employer for breach of contract under section 301 of the LMRA, they must also state a

prerequisite claim of breach of their union's duty of fair representation. . . . [A] section 301 suit is a 'hybrid' claim consisting of both a breach-of-fair-representation element and a breach-of-contract element. The breach-of-fair-representation requirement applies whether or not the plaintiffs name the union as a defendant in their LMRA suit." (citations omitted)).

Hybrid § 301 claims are subject to a six-month statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169–72 (1983); *Jones v. Gen. Elec. Co.*, 87 F.3d 209, 211–12 (7th Cir. 1996). The statute of limitations begins to run when "a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Scott v. Lear Corp.*, No. 2:14-CV-107, 2014 WL 5597276, at *6 (N.D. Ind. Nov. 4, 2014) (quoting *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 505 (7th Cir. 1999)).

Here, as Defendants argue, it is clear Plaintiff's filing is untimely. Plaintiff alleges he was unlawfully terminated on March 21, 2024, (Compl. ¶ 22), and Teamsters unambiguously informed Plaintiff on May 7, 2024, that Teamsters did not believe it could prevail in an arbitration and "decline[d] to pursue [his] grievance further or take any other action in this matter." Dkt. No. 22-3 at 1. At the latest, Plaintiff was required to file his claim within six months of learning no further action would be taken. He did not file his claim until February 10, 2026—almost two years after Teamsters informed him. Therefore, his filing was untimely.

Even an untimely claim may be saved by equitable tolling. Equitable tolling is "reserved for situations in which the claimant 'has made a good faith error (e.g., brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time.'" *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001) (quoting *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984)).

In the complaint, Plaintiff alleges "tolling and equitable relief" is appropriate because he was medically incapacitated for extended periods of time following termination. He alleges that his medical condition, hospitalization, and medication impaired his ability to timely pursue his claims. Compl. ¶¶ 50–52. But Plaintiff has failed to allege sufficient facts in his complaint showing an inability to file in a timely manner. Plaintiff does not include any details on the extent of his incapacity or hospitalization or the severity of his medical conditions and medications. Although Plaintiff attempts to supplement his complaint with over 50 pages of medical records and other documents attached to his response brief, (see Dkt. No. 32-2 at 1–62), the court will not parse through every page to assess the continuity of Plaintiff's incapacity. *See Smith v. Dart*, 803 F.3d 304 (7th Cir. 2015) ("[W]e have held that a plaintiff may supplement the complaint with factual narration in an affidavit or brief." (quoting *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir.1997)).

Further, Plaintiff's own conduct post-termination belies his incapacity assertions. Specifically, Plaintiff filed a complaint with Wisconsin Department of Workforce Development, (Dkt. No. 26-1 at 2), and applied for unemployment benefits, (Dkt. No. 32-2 at 17), during the relevant time. Without more facts properly alleged showing incapacity, and because Plaintiff's other conduct post-termination shows a capacity to bring his claim in a timely manner, the court cannot conclude he was unable to file within six months of Teamsters' notice. The court will decline to toll the six-month deadline. Accordingly, Counts I and II will be dismissed on timeliness grounds.

**B. Counts III–V Against the Company Defendants**

Count III is a claim for interference with FMLA leave and retaliation for Plaintiff's exercise of his rights under the FMLA. The Company Defendants argue that Plaintiff's FMLA claim must

be dismissed as untimely. FMLA claims must be filed within two years of the alleged violation. *See Barrett v. Ill. Dep't of Corr.*, 803 F.3d 893, 896 (7th Cir. 2015) (quoting 29 U.S.C. § 2617(c)(1)); *but see id.* at 896 n.2 (explaining the limitations for "willful violations" is three years). Because Plaintiff has not alleged a "willful" violation, nor pled any facts that would support such an allegation, the two-year limitations period applies. *See Sampra v. United States Dep't of Transp.*, 888 F.3d 330, 333 (7th Cir. 2018) (defining "willful" as when an "employer either knew the FMLA prohibited its conduct or showed reckless disregard for whether it did"). Here, Plaintiff states he underwent emergency surgery in September 2023 and that he was terminated on or about March 21, 2024. Compl. ¶¶ 16, 22. Plaintiff filed his complaint on February 10, 2026. Defendants argue that "any FMLA claim based on events relating to FMLA leave that occurred prior to February 10, 2024 is time barred." However, because it is at least conceivable that the alleged FMLA violation occurred between February 10, 2024, and February 10, 2026, the court will assess the merits.

"A plaintiff may plead two types of claims for alleged violations under the FMLA: interference, in which an employer burdens or denies substantive statutory rights of the employee provided for under the FMLA; and retaliation, in which an employer discharges or discriminates against an employee for exercising her FMLA rights." *Sanford v. Am. Oncology Partners, P.C.*, No. 121CV02625SEBTAB, 2022 WL 2176332, at *4 (S.D. Ind. June 16, 2022) (citing 29 U.S.C. § 2615). "To state any claim under the FMLA, a plaintiff must be eligible for FMLA protection in the first place." *Elzeftawy v. Pernix Grp., Inc.*, 477 F. Supp. 3d 734, 753 (N.D. Ill. 2020) (citing *Pagel v. TIN, Inc.*, 695 F.3d 622, 627 (7th Cir. 2012)). "[E]ntitlement to medical leave and eligibility as an employee are two separate things[,]" and "'[t]o prevail on . . . [an] FMLA interference claim, [a plaintiff] must establish' both that they were eligible 'for the FMLA's

protections' and 'entitled to leave under the FMLA.'" *Id.* (quoting *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 590 (7th Cir. 2008)). More specifically, a would-be plaintiff must allege that he has been employed for at least 12 months by the employer and has worked for at least 1,250 hours during the previous 12-month period. *See* 29 U.S.C. § 2611(2)(A). Here, Plaintiff alleges no facts regarding when he began working or how many hours he worked. Absent more, the court cannot conclude he was eligible for FMLA protection. In fact, the complaint fails to even allege which of the Company Defendants employed Plaintiff.

The analysis could stop there. But for the sake of completeness, the court will address Count III's other deficiencies.

Plaintiff alleges interference with FMLA benefits. "Generally, the FMLA entitles qualifying employees to up to twelve weeks of unpaid leave in a twelve-month period, maintenance of their health and employment-related benefits while on leave, and reinstatement to their previous position or its equivalent at the end of their leave. It is unlawful for an employer to interfere with these rights." *Majors v. Tootsie Roll Indus., Inc.*, No. 1:20-CV-03044, 2021 WL 1103478, at *2 (N.D. Ill. Mar. 23, 2021) (citing *Guzman v. Brown County*, 884 F.3d 633, 638 (7th Cir. 2018)) (citations omitted); *see also* 29 U.S.C. §§ 2612(a)(1), 2614(a)(1). "To ultimately prevail on a FMLA-interference claim, a plaintiff must prove the following elements: (1) she is an eligible employee; (2) the defendant is an employer subject to FMLA requirements; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice to the defendant of her intention to take FMLA leave; and (5) the defendant denied her benefits to which she was entitled. *Sanford*, 2022 WL 2176332, at *4 (citing *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)).

Here, Plaintiff alleged he underwent emergency surgery in September 2023 and was placed on FMLA leave. Compl. ¶¶ 16–17. Plaintiff also alleged he was still unable to return to work as

of March 21, 2024, when he was terminated. *Id.* ¶¶ 22, 24. "If an employee does not exercise his right to reinstatement after his twelve-week leave expires, he is no longer entitled to that benefit." *Majors*, 2021 WL 1103478, at *3 (citing *James v. Hyatt Regency Chi.*, 707 F.3d 775, 781 (7th Cir. 2013)). "An employee will lose this right 'if, at the end of his twelve-week period of leave, he is either unable or unwilling to perform the essential functions of his job.'" *Id.* (quoting *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008)). Because Plaintiff's own allegations show his inability to return to work continued far beyond the permitted twelve weeks, he was no longer entitled to reinstatement, and his allegations of interference with FMLA benefits must fail.

Plaintiff also alleges retaliation against him for pursuing protected benefits. "FMLA retaliation claims are evaluated in the same manner as retaliation claims under other employment statutes, requiring plaintiff to allege (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection between the protected activity and the adverse action." *Sanford*, 2022 WL 2176332, at *4 (citing *Pagel v. TIN, Inc.*, 695 F.3d 622, 631 (7th Cir. 2012)). Temporal proximity may be relevant to a finding of causation, but other factors—like suspicious timing, ambiguous statements suggesting retaliatory intent, evidence that the formal reason for termination was pretextual, or disparate treatment of similarly situated colleagues—usually must be present. *See Strong v. Quest Diagnostics Clinical Lab'ys, Inc.*, No. 19-CV-4519, 2021 WL 354000 at *7 (N.D. Ill. Feb. 2, 2021) (collecting cases). In this case, Plaintiff alleges he was terminated from employment pursuant to a three-day no-call/no-show policy. Compl. ¶ 22. Although he implies Defendants' stated reason was pretextual, the fact that he was terminated no fewer than three months after his FMLA leave would have been exhausted belies his allegations. Count III must fail on this ground as well.

Count IV alleges interference with protected ERISA benefits in violation of § 510. Section 510 of ERISA states that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." *Nauman v. Abbott Lab'ys*, 669 F.3d 854, 857 (7th Cir. 2012) (quoting 29 U.S.C. § 1140). "But plaintiffs claiming a violation of § 510 'must establish more than a loss of benefits; they must demonstrate that their employers [acted] with the specific intent of preventing or retaliating for the use of benefits.'" *Id.* (quoting *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998)). "In other words, employers must have been motivated by 'a desire to frustrate attainment or enjoyment of benefit rights.'" *Id.* (quoting *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005)).

Plaintiff's only allegation regarding Defendants' intent was that he "was receiving short-term disability benefits and was eligible for long-term disability and continued health and retirement benefits," "Defendants were aware of Plaintiff's benefit status and eligibility" and "Defendants terminated Plaintiff for the purpose of interfering with his attainment of ERISA-protected benefits." *See* Compl. ¶¶ 37–43. Plaintiff's allegations are bare legal conclusions, and the complaint lacks any factual allegations whatsoever to support an inference that Defendants' intent was to deprive him of his attainment of benefits.

Even if Plaintiff had included sufficient factual allegations to support an inference of intent, Plaintiff's claim fails for the independent reason that it appears he did not exhaust administrative remedies prior to filing his complaint. As Defendants argue, ERISA generally requires a plaintiff to exhaust available administrative remedies before filing suit. "Congress established the

administrative claims resolution process to 'reduce the number of frivolous law-suits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned.'" *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012) (quoting *Kross v. W. Elec. Co.*, 701 F.2d 1238, 1244–45 (7th Cir.1983)). "Although ERISA does not require administrative exhaustion as a prerequisite to suit, 'we have interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute.'" *Id.* (quoting *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011), *superseded by regulation on other grounds*). However, regarding when such exhaustion must be shown, it appears that courts in this circuit are divided on whether a Plaintiff must plead exhaustion in his complaint absent any other reference to administrative processes. *See, e.g.*, *Huber v. IKORCC Pension Plan*, No. 2:23-CV-71-JPK, 2023 WL 4015938, at *3 (N.D. Ind. June 15, 2023) (collecting cases); *Baer v. Masonite Corp.*, No. 3:11CV124, 2011 WL 2929166, at *3 (N.D. Ind. July 15, 2011) (same).

In this case, Plaintiff does not plead any facts related to exhaustion or administrative remedies. But neither does Plaintiff respond to any of Defendants' exhaustion arguments in briefing on the present motions. Because the court need not decide this specific issue to dismiss Count IV, the court will decline to do so now. However, Plaintiff is advised that, should he choose to file a First Amended Complaint, threadbare complaints and unresponsive briefing are unlikely to succeed. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1042 (7th Cir.1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response."); *County of McHenry v. Ins.*

*Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006) ("[W]hen presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.") (internal quotations omitted).

Lastly, Count V alleges retaliation against Plaintiff for pursuing workers' compensation benefits, citing Wis. Stat. § 102.35(3). Compl. ¶¶ 44–46. The Company Defendants argue Plaintiff's claim is more appropriately considered as a claim for unreasonable refusal to rehire after pursuing workers' compensation benefits, which is prohibited by Wis. Stat. § 102.35. The "Worker's Compensation Act expressly provides the exclusive remedy for employees seeking relief against their employers for work-related injuries. As a result, employers have 'no common law tort liability' to their employees." *Wren v. Columbia St. Mary's Hosp. Milwaukee, Inc.*, 2026 WI 11, ¶ 18, 419 Wis. 2d 736, 33 N.W.3d 487 (citation omitted); *see also* Wis. Stat. §§ 102.03(2), 102.35(3). The State of Wisconsin Department of Workforce Development has exclusive jurisdiction over workers' compensation claims. Wis. Stat. §§ 102.03(2), 102.14(1), 102.18.

In response to the Company Defendants' motion to dismiss, Plaintiff states he "does not oppose dismissal of the workers' compensation claim if the Court concludes that another forum has exclusive jurisdiction." Dkt. No. 32 at 6–7. But the court will not opine as to where, how, or when Plaintiff should bring his workers' compensation claim. If Plaintiff deems it appropriate, he is free to pursue his claim with the Wisconsin Department of Workforce Development—it appears from previous filings that Plaintiff is already familiar with the complaint process. *See* Dkt. No. 26-1 at 3–4. The court will grant Defendant's motion on this claim absent any authority presented in opposition. Count V will be dismissed.

As a parting note, the court is aware that Plaintiff filed a sur-reply brief in response to the Company Defendants' reply brief. *See* Dkt. No. 40. But Plaintiff did not seek leave of court to

file a sur-reply, and it appears nothing in the Company Defendants' reply brief would justify a sur-reply even if Plaintiff had sought leave. While the court has considered his sur-reply in light of his pro se status, it does not change the court's conclusions. Plaintiff is advised that he is required to comply with the Federal Rules of Civil Procedure and the Local Rules in future filings.

## CONCLUSION

**IT IS THEREFORE ORDERED** that both Teamsters' motion to dismiss (Dkt. No. 22) and the Company Defendants' motion to dismiss (Dkt. No. 23) are **GRANTED**. However, because Plaintiff is pro se, and because leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a), Plaintiff will be given 30 days in which to file a First Amended Complaint if he can, in good faith, correct the deficiencies. Plaintiff is advised that the First Amended Complaint must be complete in itself without reference to earlier complaints, which will be effectively withdrawn by a First Amended Complaint's filing. If Plaintiff does not file a First Amended Complaint by the deadline provided, the dismissal will be with prejudice. Finally, the clerk is directed to update the docket to reflect Defendants' proper names. *See* Dkt. No. 24 at 1.

Dated at Green Bay, Wisconsin this 29th day of September, 2026.

William C. Griesbach
United States District Judge